**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Norfolk Southern Railway Company | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| | ) | |
| v. | ) | C.A. NO. _____ |
| | ) | |
| | ) | |
| City of Cayce | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Norfolk Southern Railway Company, for its Complaint against Defendant, the City of Cayce, alleges and states as follows:

<u>**JURISDICTION**</u>

1.      Plaintiff, Norfolk Southern Railway Company (hereinafter "Norfolk Southern"), is a corporation and a common carrier of freight by rail, and is engaged in interstate commerce. Plaintiff is organized under the laws of the Commonwealth of Virginia with its principal place of business in Norfolk, Virginia.

2.      Defendant, City of Cayce, is a political subdivision of the State of South Carolina.

3.      Jurisdiction of this matter is appropriate under 28 U.S.C. §§ 1331, 1332 and 2201. Norfolk Southern seeks declaratory and injunctive relief from the application of the provisions of the Cayce City Code of Ordinances § 28-251 and related provisions concerning the prohibition of public nuisances that are preempted by federal statutes including, but not limited to, the Interstate Commerce Commission Termination Act of 1995 (ICCTA), 49 U.S.C. § 10101 *et. seq.*, the Federal Rail Safety Act (FRSA), 49 U.S.C. § 20101 *et seq.*, and the Commerce Clause

24-603
#104

1

of the Constitution of the United States.   Thus, Norfolk Southern's claims arise under the Constitution and Laws of the United States.

## VENUE

4.      Venue is appropriate in this district and division pursuant to 28 U.S.C. § 1391 as the defendant is a citizen and resident of Lexington County, South Carolina and the events at issue in this action occurred in whole or in part within this district and division.

## FACTS

5.      Norfolk Southern is an interstate common carrier by rail and conducts railroad operations in interstate commerce into, within and through the State of South Carolina.  Norfolk Southern's railroad operations involve the shipment of goods and interstate commerce through the State of South Carolina, Lexington County, and the City of Cayce.   As part of such operations, Norfolk Southern maintains tracks, yards, bridges, trestles, and other facilities and services within the State of South Carolina.  Such facilities are central to its rail operations in the State of South Carolina as well as the United States.

6.      Norfolk Southern owns or has a leasehold interest in existing railroad tracks and owns or has a leasehold interest in a bridge and trestle crossing over U.S. Highway 321 (Charleston Highway) in Cayce, South Carolina (hereinafter "Bridge R 111.6").   Norfolk Southern runs locomotives and trains over Bridge R 111.6 as a part of its rail operations in South Carolina.  Bridge R 111.6 has been part of Norfolk Southern's rail operations for many years.

7.      Section 28-251 of the Cayce City Code of Ordinances prohibits public nuisances affecting the public order.  Section 28-251 declares as a public nuisance "all structures bearing graffiti." On or about May 1, 2007, the City of Cayce amended the Cayce City Code of Ordinances to include in the definition of a prohibited public nuisance "[a]ll privately-owned

structures elevated above street grade and extending over or across public streets or highways, such as overpasses, bridges, trestles, or elevated passageways, whose exterior finish is destroyed, decayed, dilapidated, deteriorated or rusted." (**See Exhibit A**).  By its timing and language, the amendment appears to have specifically targeted Bridge R 111.6 and Norfolk Southern's rail operations in the City of Cayce, South Carolina.

8.    On June 4, 2007, the City Attorney for the City of Cayce informed Norfolk Southern by letter that Bridge R 111.6 likely constituted a public nuisance under the newly amended ordinance due to a "rusted trestle" and "vegetative overgrowth near the rusted trestle." The City Attorney noted that the matter had been referred to the City's Department of Public Safety for consideration of possible prosecution for ordinance violations.

9.    On August 14, 2007, a code enforcement officer for the City of Cayce issued a citation, ticket number ORD-1646 (attached as **Exhibit B**), to Kevin W. Worley, a B&B supervisor for Norfolk Southern, for a violation of § 28-252 of the Cayce City Code of Ordinances, ostensibly on the grounds that Bridge R 111.6 constituted a public nuisance.  The code enforcement officer cited the wrong section of the Cayce City Code of Ordinances; he noted on the citation that the relevant code section was "28-252," a non-existent section reserved for future use in the Cayce City Code of Ordinances.

10.    After multiple complaints by Norfolk Southern that its employee should not be criminally prosecuted for such a violation, the ordinance summons against Mr. Worley was ultimately dismissed on October 17, 2007.  On November 1, 2007, the City Attorney tendered a new ordinance summons, ticket number ORD-1951, issued solely against Norfolk Southern arising from the same violation (attached as **Exhibit C**).  On February 19, 2008, the City Attorney tendered a final ordinance summons, ticket number ORD-2051 (attached as **Exhibit D**).

These ordinance summonses contained numerous procedural defects, including a misidentification of the corporate name of Norfolk Southern, an incorrect address, and various other errors in violations of the South Carolina procedure for the issuance of such ordinance summonses. On February 21, 2008, a trial on the merits was conducted, and the municipal court judge, The Honorable Melody James, convicted Norfolk Southern of a violation of § 28-251. That citation is currently on appeal, with oral argument having been heard by Judge Keesley on October 22, 2008.

11. During Norfolk Southern's appeal of the first citation, on April 24, 2008, the City of Cayce issued yet another citation to Norfolk Southern, Uniform Traffic Ticket No. 49081-DW, for a violation of § 28-251 (attached as **Exhibit E**). Compounding the prior procedural errors, this citation was improperly issued as a uniform traffic ticket rather than a uniform ordinance summons as required by state law. Further, despite multiple corrections during the previous proceedings, the City of Cayce yet again misidentified Norfolk Southern by name in the new citation. On November 19, 2008, immediately prior to a trial on the merits, Municipal Judge Melody James dismissed this citation for lack of jurisdiction due to the City's failure to comply with state law by issuing a traffic ticket for a violation of a City Ordinance.

12. Section 28-251 of the Cayce City Code of Ordinances remains in effect, and the threat of future prosecution still looms, as section 1-6 of the Code provides that "[e]ach day any violation of this Code or any such ordinance, resolution, rule, regulation or order shall continue shall constitute . . . a separate offense." Further, following the dismissal of the ticket by Judge James on November 19, 2008, the Cayce City Attorney advised counsel for Norfolk Southern that multiple and additional citations would be issued potentially for alleged past violations of the ordinance as well as alleged future violations. The City of Cayce's actions to date, coupled

24-603
#104

with the threat of multiple and repeated prosecutions under an ordinance that is preempted by federal law, illustrates that Norfolk Southern has no adequate remedy with which to challenge the municipal ordinance at issue and that the City will continue with its vexatious and harassing prosecution of Norfolk Southern unless and until enjoined by this Court.

### COUNT I
### Interstate Commerce Commission Termination Act of 1995

13.    Norfolk Southern incorporates by reference paragraphs 1 – 11 above as if fully set forth herein.

14.    City of Cayce Code § 28-251 and its related provisions, as applied to Norfolk Southern's rail operations, are federally preempted by the Interstate Commerce Commission Termination Act of 1995 (hereinafter "ICCTA").  Jurisdiction of the Surface Transportation Board (hereinafter "STB") over the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or sidetracks, or facilities, even if the tracks are located, or are intended to be located, entirely in one state, is exclusive and preempts remedies provided under federal or state law.  49 U.S.C. § 10501(b)(2).  The broad nature of Congress' preemption under the ICCTA is further evidenced by the Act's expansive definitions of the terms "railroad" and "transportation." ICCTA defines "railroad" as including, in pertinent part:

> (A) a bridge, car float, lighter, ferry, and intermodal equipment used by or in connection with a railroad;
>
> (B) the road used by a rail carrier and owned by it or operated under an agreement; and
>
> (C) a switch, spur, track, terminal, terminal facility, and a freight depot, yard and ground, used or necessary for transportation.

49 U.S.C. § 10102(6).

15.     The City of Cayce's actions have a significant and material impact on Norfolk Southern's railroad operations.  The decisions on whether and how often to paint railroad bridges is integral to rail transportation and to Norfolk Southern's conduct of its operations.  Further, the City of Cayce's efforts, by virtue of repeated criminal prosecutions, to force and mandate Norfolk Southern to expend resources and revenue on painting and other activities deemed necessary by the City of Cayce also impacts rail operations by diverting resources from other activities such as safety, maintenance and operations.

16.     The City of Cayce does not have the authority to regulate the development, construction, improvement or expansion of railroad services and facilities (including, but not limited to, Bridge R 111.6) in the City of Cayce and, therefore, has no authority over Norfolk Southern's business decisions with respect to the usage or maintenance of Bridge R 111.6.  The City of Cayce's efforts to require Norfolk Southern to modify its rail operations to beautify a bridge or trestle constitutes an impermissible attempt to regulate transportation by rail carriers and the operation of Norfolk Southern's rail facilities.  Consequently, as applied to Norfolk Southern, § 28-251 of the Cayce City Code of Ordinances is in violation of the ICCTA and is thus preempted by reason of the supremacy clause of the Constitution of the United States, Article VI, clause 2.

## COUNT II
## Commerce Clause

17.     Norfolk Southern incorporates by reference paragraphs 1 – 16 above as if fully set forth herein.

18.     As applied to Norfolk Southern, § 28-251 of the Cayce City Code of Ordinances is unconstitutional and void and constitutes an unreasonable and undue burden on interstate commerce in violation of the Commerce Clause of the Constitution of the United States, Article

I, Section 8, clause 3, which provides: "the Congress shall have the power . . . to regulate commerce . . . among the several states . . . ."

19.    As applied to Norfolk Southern, § 28-251 of the Cayce City Code of Ordinances and any citation issued for a violation of the ordinance, by obstructing Norfolk Southern's rail operations, do and will unreasonably burden and impede the free flow of interstate commerce and do and will constitute an undue burden on interstate commerce contrary to the Commerce Clause of the Constitution of the United States, Article I, Section 8, clause 3.

20.    As applied to Norfolk Southern, § 28-251 of the Cayce City Code of Ordinances and any citation issued for a violation of the ordinance impose a serious burden on interstate commerce conducted by Norfolk Southern by materially impeding the flow of rail traffic in, within and through the State of South Carolina.

21.    As applied to Norfolk Southern, § 28-251 of the Cayce City Code of Ordinances and any citation issued for a violation of the ordinance obstruct interstate rail operations and deleteriously affect national transportation efficiency and economy to such an extent that whatever police power interests the defendant may have is substantially outweighed by the interests of the nation, which require that adequate, economical, environmentally sound, and efficient rail transportation service must not be unreasonably and unduly burdened by local regulation.   Section 28-251 of the Cayce City Code of Ordinances and any citation issued for a violation of the ordinance are unconstitutional and void and are an unreasonable burden on interstate commerce as applied to Norfolk Southern and Bridge R 111.6.

## COUNT III
## Federal Rail Safety Act

22.    Norfolk Southern incorporates by reference paragraphs 1 – 21 above as if fully set forth herein.

23.    Section 28-251 of the Cayce City Code of Ordinances and its related provisions, as applied to Bridge R. 111.6 and rail safety, are federally preempted by the Federal Rail Safety Act (hereinafter "FRSA"). The FRSA's purpose is to "promote safety in every area of railroad operations and [to] reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Accordingly, the City of Cayce does not have the authority to regulate railroad safety as it has done (including, but not limited to, regulations involving or implicating Bridge R 111.6) and, therefore, has no authority over Norfolk Southern's business decisions with respect to the usage or maintenance of Bridge R 111.6. Compliance with the ordinance places an unreasonable burden upon Norfolk Southern and thereby undermines the ultimate purpose for passage of the FRSA: uniformity of regulations. This is especially true when Norfolk Southern must reroute resources and funds dedicated to railroad safety and maintenance in order to comply with the City's beautification requirements. Thus, the City of Cayce's ordinance constitutes an impermissible attempt by a local municipality to regulate railroad bridges and/or railroad safety. Consequently, as applied to Norfolk Southern, § 28-251 of the Cayce City Code of Ordinances is in violation of the FRSA and is thus preempted by reason of the supremacy clause of the Constitution of the United States, Article VI, clause 2.

24.    Further, the Federal Railroad Administration promulgated its interim policy on bridges, but has declined to regulate the appearance of bridges. Instead, the FRA noted that "in assessing a bridge's structural condition, FRA will focus on the present safety of the structure, rather than its appearance or long term usefulness." More recently, in September of 2008, the FRA and Class 1 and short line railroads entered into an agreement called "The Essential Elements of a Railroad Bridge Management Program," which includes nine essential elements. These include maintaining a detailed bridge inventory; having procedures for the design and safety rating of bridges; insuring

bridge inspectors are properly qualified; establishing procedures for performing bridge inspections; and having a plan to protect train operations following discovery of a critical bridge problem. Nowhere does the agreement contemplate or require aesthetic maintenance to beautify railroad bridges. The FRA has indicated its intent to incorporate these elements into the existing FRA bridge safety policy by the end of 2008. Because the FRA has and continues to affirmatively decline to exercise its regulatory authority to require that bridges be made aesthetically pleasing, claims that railroad bridges should be kept free of graffiti and rust, and efforts to prosecute Norfolk Southern for a public nuisance based upon the presence of graffiti and rust, are preempted by the established doctrine of negative preemption.

## COUNT IV
### Unconstitutional Conduct

25.    Norfolk Southern incorporates by reference paragraphs 1 – 24 above, as if fully set forth herein.

26.    The City of Cayce has exceeded the authority granted to it under South Carolina statutory and constitutional law by seeking to define public nuisance as set forth in § 28-251.

27.    Additionally, the City's definition of "public nuisance" is unconstitutionally vague, and the City's conduct amounts to an impermissible taking of Norfolk Southern's property.

## COUNT V
### Declaratory Relief

28.    Norfolk Southern incorporates by reference paragraphs 1 – 27 above, as if fully set forth herein.

29.    This case presents a justiciable issue in that Norfolk Southern has a federally protected right to engage in rail operations on Bridge R 111.6 without interference from

impermissible regulation of local municipalities.  However, in light of § 28-251 of the Cayce City Code of Ordinances and the ordinance summons issued for a violation of the ordinance, Norfolk Southern will act at its peril if it proceeds with rail operations without redirecting precious and substantial resources from rail operations and railroad safety to beautification efforts to comply with § 28-251.

30.    A declaratory judgment in this matter will serve a useful purpose in clarifying and settling legal issues here in question—specifically, the authority, or lack thereof, of the defendant to regulate railroad operations, railroad safety, and Norfolk Southern's usage and maintenance of Bridge R 111.6 after the effective date of the ICCTA and the FRSA and in light of the commerce clause.

31.    A declaratory judgment in this matter will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding and will prevent this situation from arising in the future.

32.    This matter is most properly resolved through a declaratory judgment issued by this court.  The matter presented involves important federal questions and the interpretation of the constitution of the United States and a federal statute.  A ruling in this case will have significant impact on the national system of transportation by rail and is, therefore, of critical importance to the rail industry and the public at large.

### COUNT IV
### Preliminary and Permanent Injunctive Relief

33.    Norfolk Southern incorporates by reference paragraphs 1 – 32 above, as if fully set forth herein.

34.    Norfolk Southern has suffered and is continuing to suffer irreparable injury as a result of the defendant's ordinance summons and threats of future citations for violations of § 28-

251 of the Cayce City Code of Ordinances.  Unless the defendant is preliminarily and permanently enjoined from enforcing § 28-251 of the Cayce City Code of Ordinances and any related provisions, Norfolk Southern would be imminently and irreparably harmed as a result of forced compliance with § 28-251.  Norfolk Southern will also continue to be imminently and irreparably harmed by the threat of facing criminal penalties for its failure to abide by the unconstitutional and preempted statutes as each violation on a particular day constitutes a separate offense under the Cayce City Code of Ordinances.

35.    Norfolk Southern has no adequate remedy at law for the injuries alleged above and due to the fact that the ordinance in question is preempted by the federal law, Norfolk Southern has a substantial likelihood of success on the merits of this action.  The injury faced by Norfolk Southern outweighs the injury that the City of Cayce would face as a result of the issuance of injunctive relief, and the granting of injunctive relief would not adversely affect public policy or the public interest.

36.    Enjoining the defendant from enforcing § 28-251 of the Cayce City Code of Ordinances and any related provisions would cause insignificant, if any, injury to defendant, particularly given that continued rail operations of Norfolk Southern will provide the State of South Carolina and the City of Cayce with certain and continued economic benefits, including, but not limited to tax revenues, local employment opportunities and derivative benefits to tributary local enterprises.

37.    Injunctive relief will not disserve the public interests because the public will benefit from the continued economical and more efficient means of transporting freight through the State of South Carolina.

38.     Norfolk Southern is entitled to a preliminary and permanent injunction to restrain the defendant from enforcing § 28-251 of the Cayce City Code of Ordinances and any related provisions.

**WHEREFORE**, Norfolk Southern respectfully requests the following relief:

(1)     A declaratory judgment that the Interstate Commerce Commission Termination Act of 1995 preempts § 28-251 of the Cayce City Code of Ordinances and any related provisions which constitute a regulation of railroad operations and services and, therefore, the defendant is without authority to regulate Norfolk Southern's rail operations with respect to Bridge R 111.6;

(2)     A declaratory judgment that § 28-251 of the Cayce City Code of Ordinances and any related provisions as applied to Norfolk Southern and Bridge R 111.6, are unconstitutional and void, and are an unreasonable burden on Interstate Commerce;

(3)     A declaratory judgment that the Federal Rail Safety Act preempts § 28-251 of the Cayce City Code of Ordinances and any related provisions which constitute a regulation of railroad safety and, therefore, the defendant is without authority to regulate railroad safety with respect to Bridge R 111.6

(4)     A declaratory judgment that Norfolk Southern's usage and maintenance of Bridge R 111.6 are subject only to such regulation or requirements as may be imposed by the Surface Transportation Board pursuant to the Interstate Commerce Commission Termination Act of 1995;

(5)     Preliminary and permanent injunctive relief prohibiting the defendant from further regulation of Norfolk Southern's rail operations and/or railroad safety with respect to Bridge R 111.6;

(6)     Attorneys fees and costs;

(7)     Such other and further relief as to which Norfolk Southern may be entitled.

November 20, 2008                    s/ Ronald K. Wray, II
                                     Ronald K. Wray, II (Fed. I.D. #5763)
                                     James M. Dedman IV (Fed. I.D. #9939)
                                     Gallivan, White & Boyd, P.A.

24-603
#104                                          12

55 Beattie Place, Suite 1200
P.O. Box 10589, F.S.
Greenville, SC 29603
(864) 271-9580
rwray@gwblawfirm.com
jdedman@gwblawfirm.com

Frank McMaster, Esquire (Fed. I.D. #4913)
Tompkins & McMaster
1333 Main Street
Columbia, SC 29201
(803) 252-9440
fbm@tmmlaw.com

Attorneys for Plaintiff

24-603
#104